UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JUSTINA ORTOLAZA,

    Plaintiff,

v.                                    Case No: 2:17-cv-303-FtM-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER

Plaintiff, Justina Ortolaza, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits ("DIB"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I. Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

   **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert ("VE"). *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

**C. Procedural History**

Plaintiff filed an application for a period of disability and DIB on August 26, 2013, alleging disability beginning August 23, 2013. (Tr. 103, 178). Plaintiff's application was denied initially, and upon reconsideration. (Tr. 119-21, 128-32). At Plaintiff's request, an administrative hearing was held before Administrative Law Judge William G. Reamon (the "ALJ") on February 1, 2016. (Tr. 29-80). On April 21, 2016, the ALJ entered a decision finding that Plaintiff was not under a disability from the alleged onset date of August 23, 2013, through her date last insured, March 31, 2016. (Tr. 12-28). Plaintiff appealed the ALJ's decision and the Appeals Council denied Plaintiff's request for review on April 5, 2017. (Tr. 6-10). Plaintiff initiated the instant action by filing a Complaint (Doc. 1) on June 2, 2017.

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity from August 23, 2013, through her date last insured of March 31, 2016. (Tr. 14). At step two, the ALJ found that Plaintiff had two severe impairments: spine disorder and left shoulder partial thickness rotator cuff tear. (Tr. 14). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b), except the claimant could occasionally climb ramps, stairs, ladders, ropes, and scaffolds. The claimant could occasionally balance, stoop, kneel, crouch, and crawl. The claimant is further limited to no overhead reaching with the bilateral upper extremities; and she could avoid all exposure to dangerous moving machinery and unprotected heights.

(Tr. 16). At step four, the ALJ found that Plaintiff, through the date last insured, was capable of performing her past relevant work as a catheter builder, small product assembler, and a compression-molding-machine tender, as such work did not require the performance of work-related activities precluded by her RFC. (Tr. 21). Based on his step four finding, the ALJ concluded that Plaintiff has not been under a disability from August 23, 2013, through the date last insured, March 31, 2016. (Tr. 21).

## II. Analysis

Plaintiff raises two issues on appeal: (1) whether the ALJ erred by assigning great weight to the opinion of state agency physicians who rendered their opinions without the benefit of the entire record, and (2) whether the ALJ erred by assessing a legally insufficient RFC. The Court will address each issue in turn.

### a) Whether the ALJ erred by assigning great weight to the opinion of state agency physicians who rendered their opinions without the benefit of the entire record.

Plaintiff argues that the ALJ erred by improperly according "great" weight to the opinion of state agency physician Dr. Molis' February 13, 2014 opinion and "significant" weight to Dr. Kibria's February 4, 2014 opinion. (Doc. 20 p. 11). Plaintiff notes that neither Dr. Molis nor Dr. Kibria contemplated or factored into their opinions medical evidence of Plaintiff's left shoulder and upper extremity problems that began in June 2015. (Doc. 20 p. 11). Plaintiff contends that the

ALJ's reliance on these opinions does not constitute substantial evidence for his decision. (Doc. 20 p. 11). In response, Defendant argues that the ALJ did not err in giving great weight to Dr. Molis and Dr. Kibria's opinions as the ALJ acknowledged that their opinions reflected the then-existing medical evidence and that the ALJ expressly noted the medical evidence as to Plaintiff's shoulder impairment. (Doc. 20 p. 15).

The record shows that on February 4, 2014, Dr. Eshan M. Kibria performed a physical consultative examination at the request of the Division of Disability Determinations. (Tr. 686, 687). Dr. Kibria noted that Plaintiff's chief complaints included fibromyalgia; constant neck and shoulder pain; palpitations; acid reflux; depression; and anxiety. (Tr. 687). Plaintiff endorsed intermittent headaches in the posterior region of her neck. (Tr. 687). Dr. Kibria's examination revealed normal gait and station but noted that Plaintiff was unable to walk on both heels. (Tr. 688). Her motor strength in all four extremities was 5/5. (Tr. 688). Her lumbar range of motion was "pain free," but she had moderate limitation in extension. (Tr. 688). No further physical, visual or mental abnormalities were documented. (Tr. 688). Impressions/diagnoses included history of fibromyalgia with base of neck pain; headaches; history of palpitation and occasional fast heart rate; history of IBS; depression; acid reflux; osteoarthritis; and hypothyroidism. (Tr. 688).

On February 13, 2014, Dr. Edmund Molis, a non-examining, non-treating medical consultant, completed a Physical Residual Functional Capacity Assessment ("PRFC") at the request of SSA. (Tr. 113-117). Based on his file review, Dr. Molis opined that Plaintiff could occasionally lift and/or carry 20 pounds and frequently 10 pounds; sit for a total of 6 hours in an 8 hour work day; stand/walk for a total of 6 hours in an 8-hour work day; unlimited push and/or pull ability, except where previously noted; occasionally climb stairs, ropes, scaffolds, balance, stoop,

kneel, crouch, and crawl; and that she had no manipulative, visual, communicative or environmental limitations. (Tr. 114, 115).

As to Plaintiff's shoulder impairment, the record shows that on June 1, 2015, Dr. John J. Green treated Plaintiff for left shoulder pain that was interfering with her sleep and shoulder extension. (Tr. 803). Dr. Green noted that her strength was normal. (Tr. 805). On June 8, 2015, she returned with continued left shoulder pain and underwent arthrocentesis injection to the left shoulder joint. (Tr. 802). Again, Dr. Green noted that her muscle strength was normal. (Tr. 802).

On August 10, 2015, Plaintiff began treating with Scott Jaffe, M.D., a primary care physician. (Tr. 785). Initial diagnoses included osteoarthritis. (Tr. 786). On September 14, 2015, diagnoses included "pain radiating to left shoulder". (Tr. 783, 784). Accordingly, Dr. Jaffe ordered a left shoulder MRI, which revealed: (1) Supraspinatus insertion tendinopathy consistent with partial thickness tearing and/or some focal tendinitis; (2) AC joint hypertrophy with mild impingement; (3) Degenerative superior labral changes consistent with developing tearing; and (4) Small gleno-humeral joint effusion. (Tr. 787). On September 29, 2015, pursuant to the MRI, Dr. Jaffe diagnosed "complete tear, shoulder joint." On October 27, 2015, he referred Plaintiff to orthopedic surgeon, Dr. Edward R. Dupay, of Orthopedic Associates of Southwest Florida, P.A. (Tr. 782, 818, 819).

Through Dr. Dupay's office, Plaintiff began physical therapy for left shoulder pain on December 2, 2015. (Tr. 821). The pain was specifically noted to be in her bicep "when lifting and reaching." *Id.* Dr. Dupay's treatment also included a referral to neurologist, Adam Zuber. (Tr. 824). At her first appointment, on December 15, 2015, Dr. Zuber documented Plaintiff's complaints of left shoulder pain and numbness and tingling in her left hands and fingers. (Tr. 824). Dr. Zuber noted that her strength was normal at 5/5 with no atrophy or fasciculation. (Tr. 824).

Results of Plaintiff's December 24, 2015 cervical MRI were noted to be consistent with comparison MRI findings from August 2013. (Tr. 834).

In his opinion, the ALJ explained the weight he assigned to Dr. Molis' and Dr. Kibria's opinions as follows:

> The undersigned gives great weight to the opinions of Dr. Edmund Molis, the State Agency Medical Consultant, as his opinions are consistent with the physical examination findings, which show 5/5 motor strength with no atrophy, normal sensory, and normal gait and tandem gait Further, Dr. Molis' opinions are consistent with the MRI's of the cervical spine, which revealed broad-based disc protrusion at C6-7 disc level without evidence of central canal or neural foraminal narrowing; no cord compression; and only mild disc bulge at the C3-4, C4-5, and C5-6 disc levels. In addition, Dr. Molis' opinions are given great weight because he accurately reviewed then-existent medical evidence of record and reasonably explained the relationship between the identified impairments and the articulated limitations (Ex. 3A). Additional weight is assessed to Dr. Molis' opinions due to his knowledge of the Social Security Disability programs and regulations.
>
> The undersigned gives significant weight to the findings of Dr. Eshan Kibria, the consultative examiner, as his thorough physical examination, which found no range of motion limitations relative to the claimant's shoulders, normal station and gait, normal bilateral upper extremity strength/hand grips, supports the finding that the claimant is capable of performing some of her past relevant work (Ex. 16F).

(Tr. 20-21).

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social Security,* 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational

and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

In this case, the Court finds no error in the ALJ's decision to accord great and significant weight to the opinions of Dr. Molis and Dr. Kibria. As Defendant notes, the ALJ, in his analysis of Dr. Molis' opinion, specifically noted that the opinion was based on the then-existent medical evidence and explained the relationship between the impairments and articulated limitations. (Tr. 20). Although Dr. Molis and Dr. Kibria's opinions were offered before additional evidence of shoulder impairment was in the record, the ALJ's decision shows that the ALJ addressed the medical evidence pertaining to Plaintiff's shoulder impairment at length. Despite according great weight to Dr. Molis and Dr. Kibria's opinions, the ALJ nevertheless found greater limitations than opined by either doctor. Taking Plaintiff's shoulder impairment into account, the ALJ specifically limited Plaintiff to "no overhead reaching with bilateral upper extremities." (Tr. 16). Plaintiff has failed to demonstrate that the ALJ committed reversible error in the weight he assigned to the state agency physicians.

### b) Whether the ALJ erred by assessing a legally insufficient RFC.

Plaintiff's second issue is closely related to the first. Plaintiff argues that the ALJ's reliance on the state agency physicians' opinions resulted in an inadequate formulation of Plaintiff's RFC. (Doc. 20 p. 16). Plaintiff notes that beginning in 2015, the record contains significant objective evidence of Plaintiff's left shoulder impairment, which was not considered by Dr. Molis. (Doc. 20 p. 17) citing (Tr. 782, 783, 784, 786, 787, 802, 803, 818, 819, 824). Plaintiff argues that the ALJ failed to consider the combined effects of Plaintiff's alleged impairments and should have developed the record with respect to whether Plaintiff was further limited in her lifting and/or carrying ability when considering the 2015 evidence regarding her shoulder impairment. (Doc. 20

p. 19). In response, Defendant argues that the ALJ properly considered the relevant evidence in assessing Plaintiff's RFC, including Plaintiff's subjective complaints, and that substantial evidence supports the ALJ's RFC finding. (Doc. 20 p. 22-25).

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and based on that determination, decide whether the plaintiff is able to return to his or her previous work. *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of a claimant's RFC is within the authority of the ALJ and along with the claimant's age education, and work experience, the RFC is considered in determining whether the claimant can work. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997). The RFC is the most a plaintiff is able to do despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). In determining whether Plaintiff can return to her past relevant work, the ALJ must determine the Plaintiff's RFC using all of the relevant medical and other evidence in the record. *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004), 20 C.F.R. §404.1520(e).

Here, the Court finds that Plaintiff has failed to show that the ALJ's RFC finding is not supported by substantial evidence. As noted above, the ALJ did not err by relying exclusively on the state agency physician opinions, but considered them in conjunction with the rest of the medical evidence of record. In his decision, the ALJ expressly discussed the medical findings from various medical providers showing her strength and range of motion was normal. (Tr. 19, 802, 805, 811, 824). The ALJ noted that hospital records from September 25, 2015 showed she had normal strength, range of motion and no sensory deficit. (Tr. 19, 811). The ALJ further noted that her treatment records from December 15, 2015 also showed her strength was normal at 5/5 with no atrophy or fasciculation. (Tr. 19, 824). The ALJ also noted that treatment records from just prior to the September 18, 2015 MRI showed her strength was normal. (Tr. 18, 802, 805). In addition,

the ALJ's decision demonstrates that he considered Plaintiff's subjective complaints and other symptoms. (Tr. 14-21). The ALJ determined that while the record supports some level of functional limitation, it does not support the significant limitations alleged by Plaintiff. In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). Here, Plaintiff does not contest the ALJ's credibility finding and the Court finds no error in the ALJ's treatment of Plaintiff's credibility.

Further, the Court rejects Plaintiff's argument that the ALJ failed to develop the record. "[T]here must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded . . . for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997). Plaintiff has failed to show that her due process rights were violated to the degree requiring remand. As Defendant notes, Plaintiff was represented by counsel at her hearing and the ALJ expressly asked if there was any further evidence before he closed the file (Tr. 32). Her counsel responded no. (Tr. 32).

The ALJ considered all the evidence of record, including the medical evidence from just prior to the September 2015 MRI and after in evaluating Plaintiff's claim of total disability. (Tr. 18-19). As reflected in the ALJ's discussion of the evidence, the record as a whole supported the ALJ's finding that Plaintiff retained the ability to do a range of light work with limitations despite her left shoulder problems. In conducting review of the Commissioner's decision, the Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002). The Court affirms the ALJ's decision.

### III. Conclusion

The decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 21, 2018.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties